UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TAMEEKA ANDERSON,

                              Plaintiff,

              -against-

CITY OF NEW YORK,

                              Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: **01/17/2024**

No. 22 Civ. 3990 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Tameeka Anderson ("Plaintiff"), a former paramedic for the New York City Fire Department ("FDNY"), brings this action against Defendant City of New York (the "City") alleging that her former employer discriminated against her by reassigning her from the night shift, created a hostile work environment, and retaliated against her for taking medical leave and complaining about the discrimination. Plaintiff asserts claims sounding in discrimination, retaliation, and harassment in violation of the (1) Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17; (2) 42 U.S.C. 1981 ("Section 1981"); (3) Rehabilitation Act of 1973, 29 U.S.C. §§ 701 to 796; (4) Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101-12213; (5) Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§2601 to 2654; (6) New York State Human Rights Laws ("SHRL"), N.Y. Exec. Law §§ 290 to 297; and (7) New York City Human Rights Law ("CHRL"), N.Y. City Admin. Code§§ 8-101 to 131.

Before the Court is Defendant's motion to dismiss Plaintiff's Amended Complaint. For the following reasons, the Court grants in part and denies in part Defendant's motion and dismisses Plaintiff's claims without prejudice. Specifically, the Court grants Defendant's motion to dismiss Plaintiff's claims for: (1) discrimination based on race, color, religion, and disability under all statutes; (2) retaliation and harassment due to her gender under Title VII, the CHRL, and the

SHRL; and disability discrimination under the ADA, Rehabilitation Act, CHRL, and SHRL. The Court denies Defendant's motion to dismiss Plaintiff's claims for (1) gender-based discrimination under Title VII, the CHRL and the SHRL and (2) disability-based retaliation under the ADA, Rehabilitation Act, CHRL, and SHRL.

## BACKGROUND

### I.    Factual Allegations

The following facts are drawn from Plaintiff's Amended Complaint and opposition papers,[1] and are taken as true for the purposes of this motion.[2] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In April 2008, Plaintiff began working as an EMT with the New York City Fire Department ("FDNY") and in 2019, was promoted to the role of paramedic. (Amend. Compl. ¶ 1.) In April 2020, Plaintiff—a Christian, African American woman—allegedly began to face discrimination on account of her race, gender, a combination of her race and gender, vaccination status, religion, and taking medical leave. (*Id.* ¶ 2) Plaintiff further alleges Defendant (1) "retaliated against [her] for taking medical leave and complaining about the discrimination" and (2) "failed to

---

[1] In Plaintiff's Opposition Memorandum, Plaintiff alleges additional facts to supplement her operative complaint. (Pl. Opp. at 1 requesting that the Court "read any new additional facts in [her] opposition brief as supplementing the operative complaint".) The Court's "mandate to read the papers of pro se litigants generously makes it appropriate to consider [a] plaintiff's additional materials, such as his opposition memorandum." *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997) (citing *Gil v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987)); *see also Veras v. Jacobson*, No. 18-CV-6724, 2020 WL 5659551, at *1 n.1 (S.D.N.Y. Sept. 23, 2020) ("The Court properly considers factual allegations contained in [the] [p]laintiff's opposition papers and other materials submitted by [the] [p]laintiff to the extent that those allegations are consistent with the Amended Complaint."), *reconsideration denied*, 2020 WL 6694410 (S.D.N.Y. Nov. 13, 2020). Because they relate to the original wrongdoing, the Court will consider the new facts alleged in Plaintiff's Opposition. *See Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) ("A pro se plaintiff may not raise 'entirely new' causes of action for the first time in his opposition papers, but the Court may consider new claims appearing for the first time in briefing if 'the claims could have been asserted based on the facts alleged in the complaint.'") (italics omitted) (quoting *Vlad-Berindan v. MTA New York City Transit*, No. 14-CV-675, 2014 WL 6982929, at *5 (S.D.N.Y. 2014) (collecting cases)).

[2] For citations to the Amended Complaint, the Court refers to Exhibit A of the Gordon Declaration, which uses numbered paragraphs for ease of reference. (Gordon Decl ¶ 2, Ex. A.)

accommodate [her] religious beliefs." (*Id.*) Finally, Plaintiff alleges Defendant denied her due process because "FDNY's vaccination policy was arbitrary and capricious." (*Id.*)

*Plaintiff's Allegations of Discrimination and Retaliation at FDNY*

In April 2020, Plaintiff was reassigned to Station 18 in the Bronx and placed on the night shift, which pays 10 percent higher wages than the day shift. (*Id.* ¶ 3.) Of the eight positions on the night shift, Plaintiff was the only woman. (*Id.*) Plaintiff worked the night shift until December 2020, when she was placed on medical leave after contracting COVID-19. (*Id.*)

In April 2021, Plaintiff returned to Station 18 but received notice that she would be assigned to the lower-paying morning shift and could no longer work the night shift. (*Id.* ¶ 4.) After her reassignment, men held all of the eight night shift positions. (*Id.*) Of the twelve positions on the morning shift, women filled four. (*Id.*) Upon her return, Plaintiff requested reassignment to her previous position based on seniority, as she was more senior than two of the men on the night shift. (*Id.*) Although FDNY follows a seniority system to assign shifts wherein "a longer tenured employee possesses a priority right to his or her desired shift," Plaintiff was denied her seniority right to be assigned the night shift. (*Id.*) Plaintiff was told that the two junior male employees were assigned to the night shift because one was in training and the other had spent more time on the night shift, despite Plaintiff's longer tenure as an employee overall. (*Id.*)

Plaintiff alleges "[t]hese given reasons were pretextual and dishonest," and that she was denied her seniority rights due to discrimination and in retaliation for taking medical leave. (*Id.*) Specifically, she alleges she did not receive her seniority rights due to her "gender, race, combination of gender and race, [her] perceived disability from having taken medical leave when [she] got COVID-19, and/or in retaliation for having taken leave." (*Id.*) In support, Plaintiff notes that "for the entirely of [her] FDNY employment, employees in training are customarily assigned

to the morning shift, as this was seen as the best way to build experience," and during this same time, a female employee in training was assigned to the day shift. (*Id.*) Moreover, "seniority had always been calculated by reference to one's entire tenure with FDNY, not one's experience on a particular shift." (*Id.*) At this time, Plaintiff had "consistently excellent" attendance as well as "consistently excellent" performance reviews, which were superior to the two more junior male employees on the night shift. (*Id.* ¶ 5.) As a result of the discrimination and retaliation, Plaintiff received lower pay. (*Id.* ¶ 4.)

In May 2021, after her assignment to the morning shift, Plaintiff alleges she was subjected to verbal abuse and harassment from her assigned partner. (*Id.* ¶ 5.) Her partner "engaged in a campaign of intimidation," "including throwing objects, slamming doors, and staring at [her] in common spaces." (*Id.*) Plaintiff argues she faced the verbal abuse and harassment due to her "protected characteristics," and "other employees—who did not share her gender and racial identities—were not subjected to the same conditions." (*Id.*) As a result of this alleged harassment, Plaintiff filed a workplace violence complaint on May 13, 2021. (*Id.* ¶ 6.) Plaintiff further alleges two other co-workers also harassed her. Plaintiff notified her superiors in writing of each instance of harassment. (*Id.*) She filed her last complaint on October 27, 2021, and the next day, Plaintiff's employer told her not to return to work. (*Id.*)

On October 26, 2021, Plaintiff learned that FDNY employees without proof of COVID-19 vaccination were prohibited from returning to work on November 1, 2021. (*Id.* ¶ 7) "Due to [her] deeply held Christian beliefs and under advice of [her] religious mentor," Plaintiff did not receive the vaccine. (*Id.*) As a result, Plaintiff was placed on leave without pay. (*Id.*) "At no point did FDNY inform [Plaintiff] [of] the process for requesting a religious exemption to the COVID-19 requirement." (*Id.*) By the time Plaintiff learned of the process from the news, the deadline had

already passed. (*Id.*) Plaintiff alleges that "on information and belief," FDNY failed to inform her of the process and reinstate her employment in "retaliation of her efforts to speak out against gender discrimination in the department." (*Id.*)

On February 11, 2022, Plaintiff's employment with FDNY was terminated. (*Id.* ¶ 8.) On February 24, 2022,[3] Plaintiff received an email informing her of her termination and that the FDNY now required COVID-19 vaccination as a condition of employment. (*Id.*) "Prior to this email," Plaintiff alleges, "the only communications [she] had received from the FDNY during [her] mandatory leave had been emails and letters requesting that [she] submit proof of vaccination, which did not identify any option to request a religious exemption." (*Id.*) Plaintiff alleges her termination was in retaliation for her "attempts to speak out against and resist the discrimination [she] faced as an FDNY employee." (*Id.* ¶1.) Specifically, Plaintiff alleges she "complained about the harassment and discrimination [she] faced multiple times, and she was fired less than a month after the investigation of [her] final complaint concluded." (*Id.*)

*Plaintiff's EEOC Complaint*

On May 21, 2021, Plaintiff filed an internal FDNY Equal Employment Opportunity ("EEO") complaint alleging gender discrimination, specifically that men are given higher priority for the higher earning night shift position, and as a result, are allowed to earn higher wages than women. (*Id.* ¶ 6.) In July 2021, after the EEO Office failed to act on her complaint, Plaintiff requested a transfer to another FDNY Station in the Bronx, which was denied in August 2021. (*Id.*) In August 2021, Plaintiff filed a complaint (the "Charge") with the New York State Division

---

[3] Plaintiff identifies the date of the email informing her of the termination of her employment and the COVID-19 vaccination requirement as February 24, 2021. Within the broader context of the Complaint, the Court construes the date as February 24, 2022.

of Human Rights ("SDHR") and U.S. Equal Employment Opportunity Commission ("EEOC").[4]
(*Id.*)   In September 2021, Plaintiff filed another complaint with the FDNY EEO office, who
completed their investigation in January 2022. (*Id.*) On February 17, 2022, Plaintiff received a
right to sue letter from the EEOC. (*Id.* ¶ 8.)

## II.    Procedural History

Plaintiff filed this action on May 16, 2022. (ECF No. 1.) On November 28, 2022, Defendant
filed a letter motion seeking leave to dismiss Plaintiff's Complaint. (ECF No. 15.) On December
7, 2022, Plaintiff filed a letter motion seeking leave to amend the Complaint "to address the alleged
insufficiencies identified by Defendant." (ECF No. 16.) That same day, the Court granted
Plaintiff's request to amend her Complaint, and set a briefing schedule for Defendant's motion to
dismiss in the event Plaintiff filed amended pleadings. (ECF No. 17.) On January 20, 2023,
Plaintiff filed her Amended Complaint. (ECF No. 18.) In her Amended Complaint, Plaintiff
identified adverse employment actions taken by her employer as: (1) termination of her
employment; (2) not promoting her; (3) not accommodating her disability; (4) providing her with
terms and conditions of employment different from those of similar employees; (5) retaliation; and
(5) harassment. (*Id.*)

On June 20, 2023, the parties filed their respective papers on Defendant's motion to
dismiss: Defendant filed its motion to dismiss (ECF No. 30), Declaration of Ernst Bonaparte in
Support (ECF No. 31, "Bonaparte Decl."), Memorandum in Support (ECF No. 32, "Def. Mem.")
and Reply (ECF No. 34, "Reply"); and Plaintiff filed her opposition (ECF No 33, "Pl. Opp.").

---

[4] In her Amended Complaint, Plaintiff states that she filed a Complaint with the EEOC on August 21, 2021.
(Amend. Compl. ¶ 6.) Defendant's Bonaparte Declaration includes a copy of Plaintiff's EEOC charge, which she
simultaneously filed with the NYSDHR and digitally signed on August 25, 2021. (Bonaparte Decl., Exhibit B.)

**LEGAL STANDARD**

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Factual allegations must "nudge [a plaintiff's] claim from conceivable to plausible." *Twombly*, 550 U.S. at 570. A claim is plausible when the plaintiff pleads facts which allow the court to draw a reasonable inference the defendant is liable for the unlawful activity alleged. *Iqbal*, 556 U.S. at 678. "In considering a motion to dismiss for failure to state a claim, the district court is normally required to look only to the allegations on the face of the complaint . . . the court may [also] consider documents that are attached to the complaint, incorporated in it by reference, [or] integral to the complaint." *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (quotation marks omitted).

In assessing the sufficiency of the claims, the court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). While legal conclusions may provide the "framework of a complaint," "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678-79. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 678.

**DISCUSSION**

Plaintiff asserts claims sounding in discrimination, retaliation, harassment, and discrimination in violation of (1) Title VII; (2) 42 U.S.C. § 1981 ("Section 1981"); (3) the Rehabilitation Act; (4) the Americans with Disabilities Act ("ADA"); (5) the Family Medical Leave Act ("FMLA"); (6) the New York State Human Rights Law ("SHRL"); and (7) the New

York City Human Rights Law ("CHRL"). For the following reasons, the Court grants in part and denies in part Defendant's motion to dismiss Plaintiff's Amended Complaint.[5] The Court dismisses all of Plaintiff's claims *except* those claims for sex-based discrimination and disability-based retaliation under the ADA, Rehabilitation Act, CHRL, SHRL, and Title VII.

## I.     Exhaustion

At the outset, Defendant argues Plaintiff failed to exhaust her administrative remedies for her disability, race, and religious discrimination claims because Plaintiff's Charge to the SDHR, which she simultaneously filed with the EEOC, failed to mention discrimination based on her disability, race, or religion. (Def. Mem. at 4.) Plaintiff responds that her race discrimination claims are reasonably related to her gender discrimination claims sufficient to give adequate notice to the EEOC. (Pl. Opp. at 2.)

Title VII and the ADA requires a plaintiff to first exhaust her administrative remedies before filing suit in federal court. 42 U.S.C. § 2000e–5(e); 42 U.S.C. § 12117(a); *see also Williams v. New York City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006). Exhaustion requires timely filing of charges with the EEOC and obtaining notice of the right to sue. *Id.*; *see also Williams*, 458 F.3d at 69-70. In certain circumstances, claims not raised in an original EEOC charge may still be pursued if they are "reasonably related" to the initial charge. "Reasonably related conduct is that 'which

---

[5] As Defendant argues, Plaintiff's Opposition fails to address all the Defendant's arguments for dismissal of her Amended Complaint, including Defendant's arguments regarding Plaintiff's race and religious discrimination claims. (Reply at 3.) Accordingly, the Court has discretion to view these claims as abandoned by the Plaintiff. *See e.g.*, *Robinson v. Fischer*, No. 09 Civ 8882(LAK)(AJP), 2010 WL 5376204, at *10 (S.D.N.Y. Dec. 29, 2010) ("Federal courts have the discretion to deem a claim abandoned when a defendant moves to dismiss that claim and the plaintiff fails to address in their opposition papers defendants' arguments for dismissing such a claim."); *Masciotta v. Clarkstown Cent. Sch. Dist.*, No. 14-CV-7128 (KMK), 2016 WL 4449660, at *28 n.10 (S.D.N.Y. Aug. 23, 2016) (exercising discretion to dismiss claims on the merits, despite the *pro se* plaintiff's opposition not discussing the claims). However, given the Plaintiff's *pro se* status, the Court exercises its discretion and declines to deem these claims as abandoned and addresses them on the merits. *See Ransom v. Banks*, No. 1:20-cv-10232, 2022 WL 769344, at *4 (S.D.N.Y. Mar. 14, 2022) (exercising its discretion to review allegations plaintiff failed to address in its opposition to defendant's motion to dismiss); *White v. CSX Transportation, Inc.*, No. 19-CV-500 (HKS), 2023 WL 7166523, at *4 (W.D.N.Y. Oct. 31, 2023) (same).

would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made.'" *Id.* (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 358 (2d Cir. 2001)); *see also Mathirampuzha v. Potter*, 548 F.3d 70, 77 (2d Cir. 2008) (providing that claim is reasonably related when "administrative complaint can be fairly read to encompass the claims ultimately pleaded in a civil action or to have placed the employer on notice that such claims might be raised."). Whether a claim is "reasonably related" to the EEOC charge depends on "the factual allegations made in the [EEOC] charge itself" and whether those allegations "gave the [EEOC] adequate notice to investigate the claims asserted in court." *Williams*, 458 F.3d at 70 (quoting *Deravin v. Kerik*, 335 F.3d 195, 201–02 (2d Cir. 2003)) (cleaned up).

Here, Plaintiff fails to present facts sufficient to provide notice of her race or religion discrimination claims in her Charge, and her Charge cannot be read to include either of those claims either. On her Charge, Plaintiff checked the box for discrimination based on sex and wrote "I am Female and because of that I have been discriminated against." (Bonaparte Decl., Ex. B at 1.) Plaintiff then alleges that after returning from sick leave, her spot on the night shift was filled "with a trainee (Meghee/Male)" whom she had seniority over. Plaintiff further plead that the trainee "was able to remain on the overnight shift along with Paramedic Watson (male)." Plaintiff's factual assertions centers sex discrimination by focusing on the gender of the employees who replaced her on the night shift. Nowhere does Plaintiff's description of the alleged discrimination mention, or even hint at, her race or religion. Accordingly, the Court dismisses Plaintiff's claims based on race and religious discrimination under Title VII.

That said, Court will liberally construe her EEOC charge to include a disability discrimination claim.[6] Plaintiff plead facts that she contracted COVID-19 and took sick leave, and

---

[6] Administrative exhaustion in the Title VII and ADA context "is not a jurisdictional [prerequisite], but only a precondition to bringing [suit] ... that can be waived by the parties or the court." *Gomez v. New York City Police*

therefore, reading her charge as liberally as possible, she explicitly ties her sick leave to her removal from the night shift. The Court finds this is sufficient to apprise the EEOC of a potential claim for discrimination due to disability. Accordingly, the Court will assess Plaintiff's claims arising under the ADA and Title VII based on her sex and disability.

## II.     Title VII Claims

Having dismissed Plaintiff's Title VII claims based on race and religious discrimination, the Court turns to her Title VII claims for discrimination, retaliation, and harassment due to her gender. Plaintiff alleges that Defendant reassigned her to the morning shift due to her gender, retaliated against her for speaking out about discrimination, and harassed her. For the reasons stated below, Plaintiff sufficiently plead a gender discrimination claim under Title VII, but fails to state a hostile work environmental claim and a retaliation claim.

### A.  Title VII Discrimination

Title VII makes it unlawful for an employer to "discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3. At the pleading stage, "in an employment discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015). "[A] Plaintiff need only give plausible support to a *minimal inference* of discriminatory motivation." *O'Toole v. Cnty. of Orange*, 255 F. Supp. 3d 433, 438

---

*Dep't*, 191 F. Supp. 3d 293, 299 (S.D.N.Y. 2016) (citing *Francis v. City of New York*, 235 F.3d 763, 768–69 (2d Cir.2000)). However, the Court should grant a motion to dismiss if exhaustion is clear from the face of the complaint (and incorporated documents). *Id.* (citing *McCoy v. Goord*, 255 F. Supp.2d 233, 251 (S.D.N.Y. 2003)).

(S.D.N.Y. 2017) (citing *Vega*, 801 F.3d at 84) (emphasis in original). That said, a plaintiff asserting a claim for discrimination under Title VII "must still at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *Id.* (citing *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014)) (cleaned up).

Defendant argues Plaintiff's gender discrimination allegations are insufficient to state a claim because they are "based on a vague seniority policy and the demographic composition of her unit." (Def. Mem. at 10.) Specifically, Defendant argues (1) the seniority policy is vague because Plaintiff fails to cite a "source" for the policy, i.e., whether it was "written rule . . . or an unwritten workplace practice"; (2) Plaintiff failed to allege whether any women requested and were denied a night shift position; and (3) Plaintiff does not plead any "remarks or written statements conveying discriminatory animus." (*Id.* at 10-11.)

Plaintiff alleges she was denied the higher-paying night shift position due to her gender. Prior to her taking medical leave, Plaintiff was the only woman on the night shift and upon her return, there were no women on the night shift. While Plaintiff does not have any direct evidence of gender discrimination, she alleges the following facts from which the Court can plausibly infer gender discrimination: (1) the FDNY uses a seniority system for shift assignments; (2) in several other situations, employees used their seniority to obtain their preferred shift; (3) despite her seniority, Plaintiff's request for a night shift position was denied and the position was given to two more junior, male employees; (4) a similarly-situated white, male employee also requested the night shift upon his return from medical leave, which FDNY approved. (Amend. Compl. ¶ 4; Pl. Opp. at 3-4.) Although the FDNY's explained that the junior male employees were either more senior in the night shift or in training, Plaintiff further alleges these explanations were pretextual because a female employee in training was assigned to the day shift. (Amend. Compl. ¶ 4.)

Moreover, Plaintiff alleges her performance reviews were "superior" to those of the male employees. (*Id.* ¶ 5.)

These factual allegations go beyond "false syllogisms." *Bermudez v. City of New York*, 783 F.Supp.2d 560, 581 (S.D.N.Y. 2011). Plaintiff does more than allege she was denied the night shift because she is a woman—she alleges her employer contravened the established seniority system to assign men to the night shift over qualified women, which resulted in her receiving lower pay. Taken together, Plaintiff just barely "create[es] a mosaic of intentional discrimination by identifying bits and pieces of evidence that together give rise to an inference of discrimination." *Vega*, 801 F.3d at 87 (internal quotations and citation omitted). Because Plaintiff's allegations suffice just enough to "nudge" her claims from conceivable to plausible, the Court declines to grant Defendant's motion to dismiss Plaintiff's Title VII claim for sex-based discrimination at this stage. *See Heap v. Cnty. of Schenectady*, 214 F. Supp. 2d 263, 269 (N.D.N.Y. 2002) (plaintiff established prima facie case of gender discrimination by showing she was denied promotion despite her superior qualifications).

## B. Title VII Retaliation

Plaintiff alleges she faced retaliation for speaking out against gender discrimination and harassment. In support of her retaliation claim, Plaintiff alleges (1) the day after filing a workplace harassment complaint, she was told not to return to work and (2) her employer failed to inform her of the process for seeking a religious exemption to the COVID-19 vaccine. (Amend. Compl. ¶¶ 5, 8.) Defendant argues Plaintiff has failed to plausibly allege a retaliation claim because it hinges "solely on proximity" without any casual connection. (Def. Mem. at 18-19.) The Court agrees with Defendant.

""[F]or a retaliation claim to survive a motion for judgment on the pleadings or a motion

to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) because he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90 (2d Cir. 2015) (internal quotation marks omitted). "The mere fact that [a] plaintiff [has] earlier filed an EEOC complaint is not enough to support a contention that the subsequent conduct of defendants was a result of the earlier complaint." *Wilson v. Reuben H. Donnelley Corp.,* 98 Civ. 1750, 1998 WL 770555, at *4 (S.D.N.Y. Nov. 2, 1998). However, "[i]n this Circuit, an inference of causation is defeated . . . if there was an intervening causal event that occurred between the protected activity and the alleged retaliatory discharge." *Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005); *see also Brennan v. Legal Aid Soc'y*, No. 19-CV-7756 (VSB), 2020 WL 6875059, at *4 (S.D.N.Y. Nov. 23, 2020) (collecting cases).

Here, Plaintiff's factual allegations are insufficient to "establish a plausible causal nexus between the adverse employment actions and her protected activity." *Dechberry v. New York City Fire Dep't*, 124 F. Supp. 3d 131, 154 (E.D.N.Y. 2015). Plaintiff does not provide any other evidence that she was placed on leave and later terminated for speaking out against discrimination, and therefore her allegations are solely based on the temporal proximity (approximately three months) between the filing of her complaint and being told not to return to work. This temporal proximity, however, is defeated by a far more plausible explanation for Plaintiff's termination: her failure to receive the COVID-19 vaccine as required by her employer.

The most plausible reading of the alleged retaliation she experienced for speaking out against discrimination is the FDNY's enforcement of the Order of New York City's Commissioner of Health and Mental Hygiene (the "Commissioner") requiring COVID-19 vaccinations for all city employees. (Bonaparte Decl. Ex. 3.) On Wednesday, October 20, 2021, the Commissioner issued the Order establishing the vaccine mandate (*id.*); the following Wednesday, October 27, 2021,

Plaintiff was informed that unvaccinated employees could not return to work on November 1, 2021. (Amend. Compl. ¶ 5.) On November 1, 2021, Plaintiff was placed on leave without pay for failure to receive the vaccine, and on February 24, 2022, Plaintiff's employer informed her of her termination as vaccination became a condition of employment. (*Id.* ¶¶ 7-8.) These series of events plainly indicate that Plaintiff's termination was the direct result her failure to obtain the vaccine or an exemption, and therefore Plaintiff's factual allegations cannot plausibly support a claim of retaliation. Finally, even if the Court were to consider Plaintiff experienced any retaliation for filing of her EEOC complaint, the time between the filing of her final EEOC complaint in October 2021 and her termination in February 2022 is "too attenuated to establish causation." *Dechberry v. New York City Fire Dep't*, 124 F. Supp. 3d 131, 155 (E.D.N.Y. 2015) ("[D]istrict courts within the Second Circuit have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation.") (citation and internal quotation marks omitted) (collecting cases).

Similarly, Plaintiff's conclusory allegations that her employer failed to inform her of the process for obtaining an exemption to the vaccination requirement is far too speculative to plausibly state a retaliation claim. Plaintiff does not provide any specific facts to support a causal nexus between the employer's alleged failure to inform her of the exemption process and her discrimination complaints, or to create plausible inference of retaliatory motive. *Edwards v. Elmhurst Hosp. Ctr.*, No. 11 CV 5348 RRM LB, 2013 WL 839554, at *7 (E.D.N.Y. Feb. 4, 2013), *report and recommendation adopted*, No. 11-CV-5348 RRM LB, 2013 WL 831162 (E.D.N.Y. Mar. 6, 2013) ("Plaintiff must do more than invoke the word 'retaliation' to sustain an employment discrimination claim under federal law."). Per Plaintiff's factual allegations, the vaccine requirement and exemption option were publicly reported. (Amend. Compl. ¶ 7

("[Plaintiff] only learned of the process for requesting a religious exemption from the news.").)
Plaintiff fails to allege she requested information on the vaccine exemption and FDNY refused to
provide it, or that FDNY provided the information to other similarly-situated individuals. Thus,
that her employer withheld such information from her in retaliation to her complaints of
discrimination is far from plausible. Accordingly, the Court grants Defendant's motion to dismiss
Plaintiff's Title VII retaliation claim.

### C.  Title VII Hostile Work Environment

A plaintiff asserting a claim for hostile work environment under Title VII must plead facts
that would tend to show the complained of conduct: (1) "is objectively severe or pervasive—that
it creates an environment that a reasonable person would find hostile or abusive"; (2) creates an
environment "that the plaintiff subjectively perceives as hostile or abusive"; and (3) "creates such
an environment because of the plaintiff's sex." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)
(citing *Gregory v. Daly*, 243 F.3d 687, 691–92 (2d Cir. 2001)) (cleaned up). To survive a motion
to dismiss, a plaintiff need only "plead facts sufficient to support the conclusion that she was faced
with harassment . . . of such quality or quantity that a reasonable employee would find the
conditions of her employment altered for the worse." *Donahue v. Asia TV USA Ltd.*, 208 F. Supp.
3d 505, 514 (S.D.N.Y. 2016) (alterations in original) (quoting *Patane*, 508 F.3d at 113). Courts
will look at "the totality of the circumstances, including the frequency of the discriminatory
conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive
utterance; and whether it unreasonably interferes with an employee's work performance" *Yan v.
Ziba Mode Inc.*, No. 15-cv-47 (RJS), 2016 WL 1276456, at *5 (S.D.N.Y. Mar. 29, 2016) (internal
quotations omitted). "While each of these elements is relevant to the inquiry, no single factor is
required." *Dawson v. Cty. of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004) (internal quotations

omitted).

Plaintiff alleges after FDNY assigned her to the morning shift, she was assigned to a partner who subjected her to verbal abuse, harassment, and a "campaign of intimidation," including "throwing objects, slamming doors, and staring at [her] in common spaces." (Amend. Compl. ¶ 5.) In her Opposition, Plaintiff further specified that on or around May 13, 2021, her coworker Anthony Perez harassed her due to her gender by shouting at her, throwing equipment, slamming doors, and blocking her in the office. (Pl. Opp. at 4.) In addition to the abuse from this partner, Plaintiff also alleges two other employees harassed her several times as well. (*Id.*) Plaintiff further alleges other individuals of a different race and gender did not experience harassment. (Amend. Compl. ¶5.) Defendant again argues Plaintiff has failed to state sufficient factual allegations to support her claim, and the Court agrees.

"[I]t is axiomatic that in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (internal quotation marks and citation omitted). Plaintiff fails to allege a causal connection between the alleged workplace abuse she experienced and her gender, instead making conclusory allegations. Although Mr. Perez's alleged behavior indicate he is unpleasant to work with, Plaintiff's factual allegations fail to plausibly establish any discriminatory motive. *Vito v. Bausch & Lomb Inc.*, 403 F. App'x 593, 596 (2d Cir. 2010) (plaintiff's hostile work environment claims "amount to, at most, workplace bullying completely detached from any discriminatory motive"). Furthermore, without more facts to show discriminatory motive, the allegation that male employees were not subject to the harassment also falls short of stating a claim. Also far from sufficient are the facts describing the instances of harassment from the two other employees—Plaintiff only alleges they harassed her "several

times," and fails to identify over what period of time, the number of times, or any specifics of their behavior.

Even if Plaintiff sufficiently alleged she experienced harassment and abuse because of her gender, the alleged instances of harassment from Mr. Perez are not sufficiently severe or pervasive to constitute a hostile work environment. The Second Circuit has found singular instances of workplace abuse may create a hostile work environment. *See Perry v. Slensby*, No. 16-CV-08947 (NSR), 2018 WL 1136922, at *6 (S.D.N.Y. Feb. 28, 2018) (collecting cases). However, the harassment Mr. Perez allegedly subjected Plaintiff to here does not rise to a similar level. (*See e.g.*, *Marquez v. City of New York*, No. 14-CV-8185 (AJN), 2016 WL 4767577, at *9 (S.D.N.Y. Sept. 12, 2016) (harassing conduct not sufficiently severe where no evidence conduct physically threatened plaintiff or interfered with plaintiff's work); *Spina v. Our Lady of Mercy Med. Ctr.*, No. 97 CIV.4661 RCC, 2003 WL 22434143, at *3 (S.D.N.Y. Oct. 23, 2003), *aff'd*, 120 F. App'x 408 (2d Cir. 2005) (defendant's behavior of yelling, staring at, and following the plaintiff too "mild" for harassment claim); *Annunziata v. Int'l Bhd. of Elec. Workers Loc. Union # 363*, No. 15-CV-03363 (NSR), 2018 WL 2416568, at *16 (S.D.N.Y. May 29, 2018) (harassment not especially severe where comments "not sexual in nature," "overly profane," or "accompanied by any rude or physically threatening gestures"). Plaintiff fails to allege that she felt physically threatened, the harassment interfered with her work, or that Mr. Perez's behavior or statements were particularly obscene, profane, or offensive. The Court thus dismisses Plaintiff's hostile work environment claim under Title VII.

## III.   Section 1981 Claims

Plaintiff alleges that Defendant violates Section 1981. However, a separate private right of action is unavailable against state actors under Section 1981. *Duplan v. City of New York*, 888 F.3d

612, 621 (2d Cir. 2018). Plaintiff's claims against the City of New York must be brought pursuant to 42 U.S.C. § 1983 ("Section 1983"). Under Section 1983, "[m]unicipalities may be sued directly under § 1983 for constitutional deprivations inflicted upon private individuals pursuant to governmental custom, policy, ordinance, regulation, or decision." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 267 (S.D.N.Y. 2010). However, even if the Court were to construe Plaintiff's claims as a Section 1983 action, Plaintiff's claims would still fail. To state a claim under Section 1983, a plaintiff must allege an official policy or custom caused the alleged constitutional violation. *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) (citing *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 694 n.58, 98 S.Ct. 2018, 2037 n.5856 L.Ed.2d 611 (1978)). Plaintiff's Amended Complaint lacks any an allegation "of an official policy or custom," and therefore the Court dismisses her claims under Section 1983.

## IV.     Rehabilitation Act and ADA Claims

Plaintiff alleges she faced retaliation and discrimination for taking medical leave after contracting COVID-19 and her perceived disability from contracting COVID-19.[7] (Amend. Compl. ¶¶ 2-3.) Specifically, Plaintiff experienced temporary disability after contracting COVID-19 as the disease impaired her abilities in "several major life activities," including breathing and speaking. (Pl. Opp. at 5.) Although Plaintiff returned from leave when she was no longer disabled, Plaintiff alleges her employer immediately retaliated against her for taking leave by reassigning her to the lower-paying morning shift. (*Id.*) Defendant avers, *inter alia*, that Plaintiff has failed to allege she had a disability. As explained below, the Court grants Defendant's motion to dismiss

---

[7] Defendant construes Plaintiff's pleadings as alleging disability-based discrimination under the ADA and the Rehabilitation Act. Applying that standard, Defendant argues Plaintiff's claims fail because she fails to allege she had a disability. The Court construes Plaintiff's claims as alleging both a discrimination claim and a retaliation claim under the ADA and Rehabilitation Act: (1) retaliation for taking medical leave and (2) discrimination due to her perceived disability from taking medical leave. (*See* Amend. Compl. ¶ 4.)

Plaintiff's discrimination claim under the ADA and Rehabilitation Act but denies its motion to dismiss with respect to her retaliation claims.

   *A.  Discrimination Claim*

   As explained below, Plaintiff's allegations are insufficient to support Plaintiff's assertion that she has a disability, and therefore the Court dismisses her discrimination claim under the ADA and the Rehabilitation Act.

   As this Court has previously noted, "the standards under the [ADA and Rehabilitation Act] are generally the same." *Langella v. Mahopac Cent. Sch. Dist.*, No. 18-CV-10023 (NSR), 2023 WL 2529780, at *3 (S.D.N.Y. Mar. 15, 2023) (citing *Wright v. N.Y.S. Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016)). The Rehabilitation Act prohibits disability-based discrimination by government agencies and other recipients of federal funds. Section 504(a) of the Rehabilitation Act provides:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a).

   The ADA prohibits an employer from discriminating against an employee "because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). As defined by the ADA, "discrimination" includes, *inter alia*,

> not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless . . . [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the . . . [employer's] business.

Id. § 12112(b)(5)(A) (emphasis added). "[O]therwise qualified" means that the individual, "with

or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8).

Therefore, to plead a *prima facie* claim of discrimination under the ADA or Rehabilitation Act, a Plaintiff must allege "(1) that [he] is a 'qualified individual' with a disability; (2) that the defendants are subject to one of the Acts; and (3) that [he] was 'denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or [was] otherwise discriminated against by defendants, by reason of [his] disabilit[y].'" *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 85 (2d Cir. 2004), *opinion corrected*, 511 F.3d 238 (2d Cir. 2004) (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)) (all but first alterations in original). That said, at the pleading stage, "a plaintiff need only give plausible support to a minimal inference of discriminatory motivation." *Langella v. Mahopac Cent. Sch. Dist.*, No. 18-CV-10023 (NSR), 2023 WL 2529780, at *3 (S.D.N.Y. Mar. 15, 2023) (citing *Dooley v. Jetblue Airways Corp.*, 636 Fed. Appx. 16, 19–21 (2d Cir. 2015)).

"Under the ADA, a qualifying disability must limit a major life activity and the limitation must be substantial." *Id.* at *3 (citing *Laface v. E. Suffolk BOCES*, No. 2:18-CV-1314 (ADS) (AKT), 2020 WL 2489774, at *10 (E.D.N.Y. May 18, 2020). The ADA contains a non-exhaustive list of "major life activities," which includes "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2). "Factors to consider in determining whether a major life activity is substantially limited include: the nature and severity of the impairment; its duration or expected duration; and the existence of any actual or expected permanent or long term impact." *O'Hara v. Bd. of Coop. Educ. Servs., S. Westchester*,

No. 18-CV-8502 (KMK), 2020 WL 1244474, at *12 (S.D.N.Y. Mar. 16, 2020) (citing *Capobianco v. City of New York*, 422 F.3d 47, 57 (2d Cir. 2005)).

The Department of Health and Human Services promulgated regulations under the Rehabilitation Act that define a "handicapped person" as "any person who (i) has a physical or mental impairment which substantially limits one or more major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment," 45 C.F.R. § 84.3(j)(1), and a "qualified handicapped person" as one who "with reasonable accommodation, can perform the essential functions of the job in question." 45 C.F.R. § 84.3(l)(1).

Here, Plaintiff fails to plausibly allege her illness from COVID-19 substantially impaired a major life activity sufficient to plead a disability under the ADA. Rather, Plaintiff asserts a single, conclusory allegation that her abilities in "several major life activities" have been impaired, without any additional details. (*See* Pl. Opp. at 5.) Plaintiff's vague factual allegations do not describe the conditions or disorders causing the alleged impairments, or how these impairments substantially impacted "several major life activities" or her ability to work. *See Collins v. Giving Back Fund*, No. 18 CIV. 8812 (CM), 2019 WL 3564578, at *13 (S.D.N.Y. Aug. 6, 2019) (plaintiff is required "to do more than simply allude to her impairments in her pleading; she must plead *how* those impairments significantly impacted her major life activities, or she will not survive a motion to dismiss.") (emphasis in original). Furthermore, any notion that Plaintiff had a qualifying disability is further dispelled by Plaintiff herself noting that she was able to return to work after approximately four months on medical leave without a disability. (*See* Pl. Op. at 5 (noting she was "no longer disabled").). Plaintiff thus fails to plausibly allege disability discrimination under the ADA or the Rehabilitation Act.

B.  *Retaliation Claim*

Despite the Court's dismissal of Plaintiff's discrimination claim, a plaintiff may still assert a retaliation claim "so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citing *Sarno v. Douglas Elliman–Gibbons & Ives, Inc.,* 183 F.3d 155, 159 (2d Cir.1999)). There are no factual allegations or other arguments indicating that Plaintiff lacked a good faith belief that she had a disability from contracting COVID-19 and her employer discrimination against her due to that disability. Accordingly, for the purposes of this motion, the Court analyzes Plaintiff's retaliation claim under the Rehabilitation Act and the ADA.

For a retaliation claim to survive a motion to dismiss, "the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against [him or her], (2) 'because' he [or she] has opposed any unlawful employment practice." *Riddle v. Citigroup*, 640 F. App'x 77, 79 (2d Cir. 2016) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015)). In the context of a retaliation claim, an adverse employment action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe R.R. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotations omitted). This is broader than the adverse action element of employment discrimination claims. *Moore v. Consol. Edison Co. of N.Y., Inc.*, No. 00 Civ. 7384(PAC), 2007 WL 831807, at *6 (S.D.N.Y. Mar. 20, 2007). To plead causation, a plaintiff must allege "that his [or her] protected activity was the but-for cause of the adverse employment action." *Ninying v. N.Y.C. Fire Dep't*, 807 F. App'x 112, 115 (2d Cir. 2020). Temporal proximity between the adverse action and the protected activity is sufficient to establish a causal connection. *Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019).

Here, Defendant does not dispute Plaintiff's retaliation claim under the Rehabilitation Act or the ADA. Plaintiff alleges that immediately after taking medical leave, her employer denied her request for assignment to the night shift. Specifically, Plaintiff returned from medical leave in April 2021, and was notified that she was prohibited from working overnights in May 2021. (Amend. Compl. 4.) Medical leave is a protected activity, and assignment to a position with reduced pay is a materially adverse employment action. *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (examples of adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.") (citations omitted). Moreover, the Second Circuit has found a month between the adverse action and the protected activity sufficient to establish a causal connection. *Treglia*, 313 F.3d at 721 (a period of one month between protected activity and adverse employment activity sufficient to establish causation for *prima facie* retaliation claim). Accordingly, at this stage, Plaintiff's allegations are sufficient to plead a claim of retaliation under the ADA and the Rehabilitation Act.

## V.     FMLA Claims

Defendant argues Plaintiff fails to state a claim under the FMLA because she failed to plead she was entitled to benefits under the FMLA. (Def. Mem. at 20-21.) The Court agrees.

The FMLA makes it unlawful for employers to (1) "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" provided under the FMLA; or (2) "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA." 29 U.S.C.  2615(a). Because Plaintiff fails to plead she is an eligible employee, that she was entitled to FMLA benefits, or that Defendant interfered with her ability to exercise

her rights under the FMLA, the Court dismisses this claim.

## VI.   SHRL Claims

The SHRL prohibits discrimination, retaliation, and harassment based on sex, race, national origin, disability, and other protected classes. N.Y. Exec. Law §§ 290 *et seq*. The SHRL applies the same standards for employment discrimination under Title VII and the ADA. *See Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 324 (S.D.N.Y. 2020) (Claims under both Title VII and the NYSHRL . . . are generally treated as 'analytically identical,' and addressed together.") (citations omitted); *Kopchik v. Town of E. Fishkill, New York*, 759 F. App'x 31, 37 (2d Cir. 2018) ("New York State disability discrimination claims are governed by the same legal standards as federal ADA claims.") (quoting *Rodal v. Anesthesia Grp. of Onondaga, P.C.,* 369 F.3d 113, 117 n.1 (2d Cir. 2004)). The standards for retaliation are also similar across the SHRL, the ADA, and Title VII. *See Farmer*, 473 F. Supp. At 330 ("The same standards govern retaliation claims under [the SHLR and Title VII].")"; *Viruet v. City of New York*, No. 16-CV-8327 (JGK), 2019 WL 1979325, at *16 (S.D.N.Y. May 3, 2019) (applying the same standards to a retaliation claim under the ADA and the SHRL). Finally, courts apply the same standard when assessing hostile work environment claims arising under Title VII, the SHRL and the ADA. *See Farmer*, 473 F.Supp. at 334 ("Hostile work environment claims under Title VII and the [SHRL] are judged by the same standard.") (citing *Summa v. Hofstra Univ.*, 708 F.3d 115, 123–24 (2d Cir. 2013)); *Berger v. New York City Police Dep't*, 304 F. Supp. 3d 360, 373 (S.D.N.Y. 2018) (analyzing hostile work environment claims under the SHRL and the ADA using the same standard). Accordingly, for the same reasons discussed above for the federal claims, the Court dismisses Plaintiff's NYSHRL claims for race-, religion-, and disability-based discrimination, gender-based retaliation, and harassment. Plaintiff's remaining SHRL claims based on sex-based discrimination and

disability-based retaliation survive.

## VII.    CHRL Claims

CHRL provides it should "be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (quoting N.Y.C. Admin. Code § 8-130). Broader scope, however, is not unlimited scope. "[T]he [CHRL] is not a general civility code," and "a defendant is not liable if the plaintiff fails to prove the conduct is caused at least in part by discriminatory or retaliatory motives." *Id.* at 113. Courts may construe the [CHRL] broadly, but "only to the extent that such a construction is reasonably possible." *Makinen v. City of New York*, 857 F.3d 491, 495 (2d Cir. 2017) (internal quotation marks omitted). Beyond the broader scope of CHRL claims, the standards are similar to those for discrimination, retaliation, and hostile work environment claims under Title VII and the ADA. *See Farmer*, 473 F.Supp.3d at 327 ("The [CHRL] uses the same framework as Title VII and the NYSHRL, but contains, as to some elements, more liberal pleading and proof standards.") (citing *Deveaux v. Skechers USA, Inc.*, No. 19 Civ. 9734 (DLC), 2020 WL 1812741, at *5 (S.D.N.Y. Apr. 9, 2020)); *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) (when interpreting CHRL claims, courts should treat "similarly worded provisions of federal and state civil rights law as a *floor* below which [the CHRL] cannot fall."). That said, a plaintiff's claims under the CHRL must be analyzed "separately and independently from any federal and state law claims." *Mihalik*, 715 F.3d at 109.

Plaintiff has asserted claims for discrimination based on her sex, race, religion, and disability; harassment due to her gender; and retaliation for speaking out against gender discrimination and for taking medical leave. As the Court has already determined Plaintiff plausibly stated claims for gender-based discrimination under Title VII and retaliation for taking

25

medical leave under the ADA and Rehabilitation Act, these allegations are also sufficient to state those same claims under the CHRL. Accordingly, the Court only analyzes whether Plaintiff may assert claims for harassment, retaliation for speaking out against gender discrimination, and discrimination based on her race, religion, and disability under the CHRL's more liberal pleading standards. The Court determines Plaintiff cannot.

### A. Hostile Work Environment

To assert a hostile work environment claim under the CHLR, a plaintiff must merely prove "the existence of unwanted gender-based conduct." *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011) (citing *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 872 N.Y.S.2d 27, 38, 39 (2009)). A hostile work environment due to sexual harassment "occurs when an employer's conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *Id.* (internal quotations and citations omitted). That said, "pretty slights or trivial inconveniences" are insufficient to state a claim. *Id.* (citation omitted).

As discussed above, Plaintiff still fails to allege Mr. Perez's and two other unnamed male employees' behavior was motivated by one of her protected characteristics. Plaintiff's conclusory assertion she was "subjected to these conditions based on [her] protected characteristics" is insufficient to plausibly state the "campaign of intimidation" she experienced was due her gender, race, religion, or perceived disability. *See, e.g.*, *Kumaga v. New York City Sch. Const. Auth.*, 27 Misc. 3d 1207(A), 910 N.Y.S.2d 405, 2010 WL 1444513, at *15 (Sup. Ct. 2010) (dismissing hostile work environment claim where plaintiff did not show negative assessment and harassment were motivated by his protected status); *Russo v. New York Presbyterian Hosp.*, 972 F. Supp. 2d 429, 451 (E.D.N.Y. 2013) ("[A] plaintiff must still establish that she suffered a hostile work

environment *because of her gender*.") (emphasis in original) (collecting cases dismissing hostile work environment claims because plaintiffs failed to show animus was due to their protected characteristics). Accordingly, Plaintiff's claim cannot survive even under CHRL's more liberal pleading standard.

### B. *Retaliation*

In contrast to ADA, Title VII, or SHLR retaliation claims, under the CHRL, "retaliation in any manner is prohibited, and the retaliation need not result in an ultimate action with respect to employment or in a materially adverse change in the terms and conditions of employment." *Viruet*, 2019 WL 1979325, at \*16 (citing *Belton v. City of New York*, No. 12 Civ. 6346, 2014 WL 4798919, at \*8 (S.D.N.Y. Sept. 26, 2014)), *aff'd*, 629 F. App'x 50 (2d Cir. 2015)) (cleaned up). "The proper inquiry under the CHRL is whether a jury could "reasonably conclude from the evidence that [the complained-of] conduct [by the employer] was, in the words of the [CHRL], reasonably likely to deter a person from engaging in protected activity," without taking account of whether the employer's conduct was sufficiently deterrent so as to be "material[ ]." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 723 (2d Cir. 2010) (quoting *Williams*, 61 A.D.3d at 71).

Applying the "reasonably likely" standard, Plaintiff has not plausibly alleged she faced retaliation for complaining about discrimination. As discussed above, Plaintiff relies solely on the temporal proximity between the filing of her complaint and being told not to return to work. However, the Court cannot plausibly infer a retaliatory motive based on temporal proximity given the far more plausible explanation for the adverse employment action: Defendant failed to comply with COVID-19 vaccination requirements.

Plaintiff, who elected to not receive the vaccine, was placed on leave in November 2021 pursuant to FDNY policy that prohibited employees without a proof of vaccination to return to

work. Still unvaccinated, Plaintiff was terminated in February 2021. (Amend. Compl. ¶¶ 7-8.) FDNY's COVID-19 vaccination requirement and Plaintiff's failure to comply therewith sever any causal connection between Plaintiff filing her EEOC charges and her being placed on leave without pay then ultimately terminated to break any. *See Brennan v. Legal Aid Soc'y*, 2020 WL 6875059, at *4. Finally, as discussed above, Plaintiff pushes the limits of plausibility in alleging that her employer retaliated against her by failing to provide information about religious exemptions to the vaccine mandate when such information was widely available. As plead, a factfinder could not reasonably conclude Plaintiff faced retaliation for filing complaints about discrimination.

### C. *Discrimination*

Under the less stringent pleading standard of the CHRL, to plausibly state a claim for discrimination, a plaintiff "need only show differential treatment—that she is treated 'less well'— because of discriminatory intent." *Mihalik*, 715 F.3d at 109. Plaintiff's allegations still fall short. Beyond conclusory allegations, Plaintiff does not plead facts that she was treated differently due to her disability—Plaintiff does not allege her employer knew about her disability, and even asserts that she was no longer disabled upon returning to work. (Pl. Opp. at 5.) As Defendant observes, Plaintiff returned to full duty, just on a different shift. (Def. Mem. at 11.)

Plaintiff's race and religious discrimination claims also remain too speculative. Beyond conclusory allegations that she faced discrimination due to her race and religion, Plaintiff fails to allege facts indicating her race or religion influenced in any way her employer's decision to reassign her to the day shift, place her on leave, or terminate her employment. Accordingly, Plaintiff's claims alleging discrimination based on her disability, race, and religion also fails under the CHRL. *See Farmer*, 473 F.Supp.3d at 330 (plaintiff's subjective belief she experienced race discrimination insufficient to state a claim under the CHRL).

28

**VIII.   Leave to Amend**

"Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Matima v. Celli,* 228 F.3d 68, 81 (2d Cir.2000) (internal quotation marks and citation omitted). "A *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir.2010) (internal brackets and quotation marks omitted). However, "leave to amend a complaint may be denied when amendment would be futile." *Tocker v. Philip Morris Cos.,* 470 F.3d 481, 491 (2d Cir.2006).

Certain claims are legally unavailable to Plaintiff, such as her FMLA and Section 1983 claims, as well as the claims she failed to exhaust under Title VII and the ADA. However, Plaintiff may plead additional facts to flesh out her claims for gender-based harassment and retaliation under Title VII and disability-based discrimination under the ADA and Rehabilitation Act. Moreover, as Plaintiff's Amended Complaint was the first complaint for which motion practice occurred, the claims the Court dismisses are deemed dismissed without prejudice and Plaintiff is granted leave to file amended pleadings.

**CONCLUSION**

The Court GRANTS in part and DENIES in part Defendant's motion to dismiss. Specifically, the Court dismisses with prejudice Plaintiff's claims for: (1) discrimination based on race, color, and religion under Title VII; (2) Section 1981; and (3) the FMLA. The Court dismisses without prejudice Plaintiff's claims for: (1) harassment under Title VII, the CHRL, and the SHRL; (2) sex-based retaliation under Title VII, the CHLR, and the SHRL; and (3) disability-based discrimination under the Rehabilitation Act and ADA. The Court denies Defendant's motion to

dismiss Plaintiff's claims for (1) sex-based discrimination under Title VII, the CHRL, and the SHRL; and (2) disability-based retaliation under the Rehabilitation Act, ADA, CHLR, and SHRL.

Plaintiff is granted leave to file a Second Amended Complaint by February 16, 2024, consistent with this Order. Plaintiff is advised that the Second Amended Complaint will replace, not supplement, the Amended Complaint, and so any claims that she wishes to pursue must be included in, or attached to, the Second Amended Complaint. Should Plaintiff file a Second Amended Complaint, Defendant is directed to answer or otherwise respond by March 15, 2024. If Plaintiff fails to file a Second Amended Complaint within the time allowed, those claims that were dismissed without prejudice will be deemed dismissed with prejudice.

The Clerk of Court is further directed to terminate the motion at ECF No. 30.

Dated: January 17, 2024                                    SO ORDERED.
      White Plains, NY

_____

NELSON S. ROMÁN
United States District Judge

30